**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>INDIANAPOLIS DOWNS, LLC, et al.,<br><br>Debtors. | Chapter 11<br>Case No. 11-11046 (BLS)<br>(Jointly Administered) |
| INDIANAPOLIS DOWNS, LLC and<br>INDIANA DOWNS CAPITAL CORP.<br><br>Plaintiffs,<br><br>v.<br><br>POWER PLANT ENTERTAINMENT<br>CASINO RESORTS, INDIANA, LLC., et al.,<br><br>Defendants. | Adversary No. 11-51996 (BLS) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE MOTION OF THE AD HOC SECOND LIEN COMMITTEE**
**TO INTERVENE IN ADVERSARY PROCEEDING NO. 11-51996**
**PURSUANT TO 11 U.S.C. § 1109(b) AND FED. R. BANKR. P. 7024**

David W. Carickhoff (No. 3715)
Stanley B. Tarr (No. 5535)
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Tel: (302) 425.6400
Fax: (302) 425.6464
Carickhoff@BlankRome.com
Tarr@BlankRome.com

Ira S. Dizengoff, Esq.
Sean O'Donnell, Esq.
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
sodonnell@akingump.com

Scott L. Alberino, Esq.
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
salberino@akingump.com
*Counsel to the Ad Hoc Second Lien Committee*

**TABLE OF CONTENTS**

**Page**

SUMMARY OF MOTION ....................................................................................... 1

A. The Relevant Parties ....................................................................................... 3

B. The Maryland Litigation ....................................................................................... 3

C. The Debtors File the Adversary Proceeding to Stay the Maryland Litigation ....................................................................................... 4

ARGUMENT ....................................................................................... 5

A. The Ad Hoc Second Lien Committee Has An Unconditional Right To Intervene ....................................................................................... 5

B. The Ad Hoc Second Lien Committee's Request Also Satisfies the Requirements for Intervention By Right Under Fed. R. Civ. P. 24(a)(2). ............... 8

CONCLUSION ....................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re G-I Holdings, Inc.*,
292 B.R. 804 (Bankr. D.N.J. 2003) ....................7

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir. 1998)....................8

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
72 F.3d 361 (3d Cir. 1995)....................7

*Official Unsecured Creditors' Comm. v. Michaels (In re Marin Motor Oil),*
689 F.2d 445 (3d Cir. 1982)....................5

*Phar-Mor, Inc. v. Coopers & Lybrand,*
22 F.3d 1228 (3d Cir. 1994)....................5, 6

*Saudi Am. Bank v. Saudi Arabian Oil Co. (In re Stone & Webster, Inc.),*
Civ. No. 06-399-SLR, 2007 WL 2460590 (D.C. Del. Aug. 29, 2007)....................7

*Schils Am. Acquisition Corp. v. Schils BV,*
No. 3:05-CV-0588, 2006 WL 335778 (M.D. Pa. Feb. 14, 2006)....................6

*Stone & Webster, Inc. v. Saudi Arabian Oil Co. (In re Stone & Webster, Inc.),*
No. 07-3891, 2009 WL 1510247 (3d Cir. July 2, 2009)....................7

*U.S. v. State Street Bank (In re Scott Cable Comm., Inc.),*
No. ADV. A-01-04605, 2002 WL 417013 (Bankr. D. Del. Mar. 4, 2002) ....................6

*Wakefern Food Corp. v. C&S Wholesale Grocers, Inc. (In re: Big V Holding Corp.),*
No. 00-04372 (RTL), 2002 WL 1482392 (D. Del. July 11, 2002)....................6

**STATUTES AND RULES**

11 U.S.C.

§ 101(10)(A) ....................5

§ 362....................1, 3, 4

§ 1109(a) ....................1

§ 1109(b).................... *passim*

Fed. R. Civ. P. 24 .......... *passim*

Fed. R. Civ. P. 15(a)(1)(b) .......... 7

Fed. R. Bankr. P. 7015 .......... 7

Fed. R. Bankr. P. 7024 .......... *passim*

The ad hoc committee of holders of 11% Senior Secured Notes (the "Ad Hoc Second Lien Committee" or the "AHSLC") submits this memorandum of law, pursuant to 11 U.S.C. § 1109(b) and Fed. R. Bankr. P. 7024, in support of its Motion to Intervene in Adversary Proceeding No. 11-51996 (the "Adversary Proceeding"),[1] and states as follows:

## SUMMARY OF MOTION

1. The AHSLC brings this Adversary Proceeding to protect its significant interests in the Debtors' bankruptcy estates. These interests consist of over half of the Debtors' second priority debt. The Defendants in this proceeding are parties in an action in Maryland State Court (the "Maryland Litigation") filed against the trusts (the "Trusts") that own the Debtors, and against Ross Mangano ("Mangano"), the Debtors' Chief Executive Officer, in his individual capacity and in his capacity as trustee of the Trusts. The Maryland Litigation levels a variety of charges against Mangano and the Trusts, and seeks $600 million in damages.

[1] The AHSLC sought consent to intervene in the Adversary Proceeding from all parties to the Adversary Proceeding that appeared at the May 17, 2011 TRO Hearing, including the Debtors and the Maryland Plaintiffs. On May 23, 2011, the AHSLC sent emails seeking consent to intervene in the Adversary Proceeding from counsel for all parties to the Adversary Proceeding that appeared in the Maryland Litigation. The AHSLC received no definitive responses. Further, neither the Maryland Plaintiffs nor the Debtors informed the AHSLC as to their contemplated discovery schedule, which required the exchange of written discovery requests on May 27, 2011. On May 31, 2011, the AHSLC sent a follow up email informing counsel that the AHSLC required a definitive answer regarding consent by the end of day. The Debtors consented to the AHSLC's intervention as being consistent with Rule 7024 of the Federal Rules of Bankruptcy Procedure as it incorporates Federal Rule of Civil Procedure 24. The Debtors also circulated, on behalf of the AHSLC, a proposed stipulation in which all parties to the Maryland Litigation would consent to the AHSLC's intervention. Unfortunately, those parties have either failed to respond to the AHSLC's solicitations, have taken no position with regard to the AHSLC's request to intervene, or, as in the case of the Maryland Plaintiffs, have unreasonably refused their consent to the AHSLC's intervention.

2. The Debtors brought the Adversary Proceeding against the parties to the Maryland Litigation seeking a TRO (which was granted), as well as declaratory and injunctive relief to enforce the automatic stay pursuant to 11 U.S.C. § 362. The Debtors assert that the Maryland Litigation promises to deplete or harm the Debtors' estates in several ways: (a) the Debtors may be required to indemnify Mangano and the Trusts for costs and any liability from the Maryland Litigation; (b) the Maryland Litigation might have collateral estoppel effects on a related, stayed arbitration in which the Debtors are defendants; and (c) the litigation will consume time, attention, money, and other resources needed for the Debtors' ongoing and likely reorganization.[2]

3. The AHSLC, which is composed of the holders of more than a majority of the Debtors' second priority debt, has an indisputable interest in the preservation of the value of the Debtors' estates. This interest is implicated by the subject of the Adversary Proceeding. For example, findings or rulings in the Maryland Litigation could collaterally estop the Debtors or creditors of their estates from asserting legal or factual positions regarding any claims, defenses or positions asserted by PPE Indiana (defined below) in the Debtors' chapter 11 cases, including, without limitation, in connection with litigating issues relating to the rejection of the PPE Indiana Management Agreement (defined below), the assumption of the Trademark License Agreement or continuing to defend the PPE Indiana Arbitration, and any claims asserted by PPE Indiana in the Debtors' chapter 11 cases. Moreover, the parties to the Maryland Litigation likely will impose significant third-party discovery burdens upon Debtors, including document requests, depositions, and other costly discovery devices that would materially deplete the funds and resources of the Debtors' estates. The AHSLC therefore seeks to enforce its unconditional,

[2] The language in Debtors' brief alternates between assertions that Debtors do, or may, have a duty to indemnify Mangano and the Trusts.

statutory right to intervene in the Adversary Proceeding pursuant to 11 U.S.C. § 1109(b) and Fed. R. Bankr. P. 7024 by bringing this timely motion.

## BACKGROUND

### A. The Relevant Parties

4. The AHSLC is composed of holders of more than a majority of the Debtors' second priority debt.

5. Power Plant Entertainment Casino Resort Indiana, LLC ("PPE Indiana"), PPE Casino Resorts Maryland, LLC, and The Cordish Company (collectively, the "Maryland Plaintiffs"), are plaintiffs in the Maryland Litigation and defendants in the Adversary Proceeding.

6. Ross Mangano is the Chief Executive Officer of the Debtors, as well as the trustee of the Trusts that own the Debtors. Mangano and the Trusts are defendants in the Maryland Litigation.

### B. The Maryland Litigation

7. On February 15, 2011, the Maryland Plaintiffs filed suit in the Circuit Court for Baltimore, Maryland against Mangano, in his individual capacity and as trustee of the Trusts, and against the Trusts themselves. *See* Adversary Proceeding Docket ("Dkt") # 5, Ex. 1 ("Maryland Litigation Compl.").

8. The Maryland Litigation's lengthy complaint brings a variety of causes of action against Mangano and the Trusts. The Maryland Plaintiffs assert that Mangano and the Trusts are liable for tortious interference with contract because they allegedly caused the Debtors to breach the contract between PPE Indiana and the Debtors under which PPE Indiana would develop and manage the Debtors' Indiana Live! casino (the "PPE Indiana Management Agreement"). (Maryland Litigation Compl. ¶¶ 102–09.) They assert "false light invasion of privacy" against Mangano and the Trusts for their alleged threats to make public the private PPE Indiana

Management Agreement, and for purportedly "falsely portraying PPE Indiana as an inferior and incompetent gaming operator" and spreading other false and harmful information. (Maryland Litigation Compl. ¶ 111.) They assert an additional six causes of action for false light and defamation, as well as civil conspiracy (Maryland Litigation Compl. ¶¶ 116–50), and seek damages of $600 million.

**C. The Debtors File the Adversary Proceeding to Stay the Maryland Litigation**

9. On May 10, 2011, the Debtors initiated this Adversary Proceeding by filing a complaint (the "Adversary Complaint") seeking a declaratory judgment that 11 U.S.C. § 362 operates to stay the Maryland Litigation, and, to the extent that it does not, injunctive relief against the Maryland Litigation, and also sought a TRO to stay the litigation immediately. Dkt #1.

10. The Debtors' accompanying motion argues that this Court should apply the automatic stay to the Maryland Litigation because there is a unity of interests among the Debtors, Mangano, and the Trusts regarding that litigation. First, the Debtors argue that the Fourth Amended and Restated Operating Agreement of Indianapolis Downs, LLC (the "Operating Agreement") obligates the Debtors to indemnify Mangano and the Trusts for costs of defense and any liability stemming from the Maryland Litigation. Dkt #4 at 4–5. Second, the Debtors argue that continued prosecution of the Maryland Litigation poses a risk of collateral estoppel on the grounds that such litigation is based on the same facts and disputes as any claim that might be asserted by PPE Indiana, the Debtors' motion to reject the PPE Indiana Management Agreement and the prepetition arbitration commenced by PPE Indiana against the Debtors. *Id.* at 5. Third, the Debtors argue that allowing the Maryland Litigation to proceed would consume the Debtors' time, attention, and money, and threaten the Debtors' likely successful reorganization. *Id.*

11. This Court heard argument on the Debtors' requested TRO on May 17, 2011 (the "TRO Hearing"), and, in a ruling from the bench, granted the requested relief. The Court issued the executed TRO on May 26, 2011, finding the possibility of irreparable harm from "liability or damage" to the Debtors. Dkt # 18 at 5. The Debtors' request for declaratory and preliminary injunctive relief is still pending.

12. It is in this Adversary Proceeding that the AHSLC now seeks to intervene.

## ARGUMENT

### A. The Ad Hoc Second Lien Committee Has An Unconditional Right To Intervene

13. The AHSLC's unconditional right to intervene permits intervention in this Adversary Proceeding. Fed. R. Civ. P. 24(a) states that "[o]n timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute." Fed. R. Bankr. P. 7024 incorporates Fed. R. Civ. P. 24 and governs intervention in adversary proceedings. Fed. R. Bankr. P. 7024 ("Rule 24 Fed .R. Civ. P. applies in adversary proceedings."). The general right to intervene arises from 11 U.S.C. § 1109(b), which explains that "[a] party in interest, including . . . a creditors' committee . . . a creditor . . . or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." And it is well-settled in the Third Circuit that this right is unconditional. *See, e.g., Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1232 (3d Cir. 1994); *In re Marin Motor Oil*, 689 F.2d 445 (3d Cir. 1982).

14. The AHSLC is indisputably one of the parties-in-interest under 11 U.S.C. § 1109(b), and therefore has an unconditional right to intervene. The AHSLC is composed of individual creditors holding in the aggregate more than a majority of the Debtors' second priority debt. *See* 11 U.S.C. § 101(10)(A) (defining creditor as an "entity that has a claim against the

debtor that arose at the time of or before the order for relief concerning the debtor."); *Phar-Mor*, 22 F.3d at 1230–31; *In re Marin Motor Oil, Inc.*, 689 F.2d at 454–55.

15. Furthermore, the AHSLC's interest in the Debtors' estates is self-evident. The facts and disputes at issue in the Maryland Litigation will overlap with the facts and disputes before the Court in the Debtors' chapter 11 cases and the facts and disputes underlying the PPE Indiana Arbitration. Thus, findings or rulings in the Maryland Litigation could collaterally estop the Debtors or creditors of the estates from asserting legal or factual positions regarding claims, defenses or positions asserted by PPE Indiana in the Debtors' chapter 11 cases, including, without limitation, in connection with litigating issues relating to the rejection of the PPE Indiana Management Agreement, the assumption of the Trademark License Agreement or continuing to defend the PPE Indiana Arbitration, and any claims asserted by PPE Indiana in the Debtors' chapter 11 cases. For instance, the disputes in each of these proceedings put squarely at issue whether the Debtors breached the PPE Indiana Management Agreement and whether the Debtors have claims against PPE Indiana which could be setoff against any liabilities of the Debtors owed to PPE Indiana. Permitting the Maryland Litigation to continue could prejudice the ability of the Debtors and their stakeholders to defend the estates against claims asserted and expected to be asserted by PPE Indiana. Moreover, the continuance of the Maryland Litigation would also impose significant third-party discovery burdens on the Debtors, including document requests, depositions, and other costly discovery devices that would deplete funds and resources from Debtors' estate. Consequently, the AHSLC's right to intervene to protect its interests in the Debtors' estates is without question.

16. Notably, the Maryland Plaintiffs appear to base their refusal to consent to the AHSLC's intervention on an assertion that the *Phar-Mor* decision somehow established a three-

prong test to determine the propriety of intervention under § 1109(b) (which test the AHSLC purportedly has not satisfied).[3] *See Phar-Mor*, 22 F.3d at 1240. That is not the case. In fact, the *Phar-Mor* Court merely referenced three interests it found relevant to its analysis of the kinds of proceedings to which §1109(b) should be applied, eventually holding that § 1109(b)'s list of parties-in-interest may intervene unconditionally in proceedings both brought "under" and "related to" a bankruptcy proceeding. *Phar-Mor* therefore did not in any way establish a three-prong test that parties in interest otherwise enumerated in the text of § 1109(b) must satisfy to invoke the statute, or compromise clear Third Circuit precedent that creditors possess an unconditional right to intervene into adversary proceedings. *See Phar-Mor*, 22 F.3d at 1240.

17. Courts in this Circuit have consistently applied this unconditional right to intervene. *See, e.g. Wakefern Food Corp. v. C&S Wholesale Grocers, Inc. (In re: Big V Holding Corp.)*, No. 00-04372 (RTL), 01-758, Civ. A. 01-233 (GMS), 2002 WL 1482392, at *3 (D. Del. July 11, 2002) ("since 11 U.S.C. § 1109(b) gives a creditors' committee an unconditional right to intervene in light of *Phar-Mor*, the Creditors' Committee is a proper intervenor in this matter pursuant to Rule 24(a)(1)."); *Schils America Acquisition Corp. v. Schils BV*, No. 3:05-CV-0588, 2006 WL 335778, at *2 (M.D. Pa. Feb. 14, 2006) ("the Third Circuit . . . held that a case in

[3] The Maryland Plaintiffs used this misreading of *Phar-Mor* in their communications denying the Ad Hoc Second Lien Committee's request to intervene. The Maryland Plaintiffs also cited to the unreported and not-precedential decision *In re: Stone & Webster, Inc*., No. 07-3891, 2009 WL 1510247 (3d Cir. July 2, 2009), for the supposed proposition that a "claim to proceeds of collateral does not entitle a party to intervene." *Id.* at *204. That opinion sets forth no facts that could illuminate what "proceeds of collateral" might mean. A review of the District Court opinion below reveals, however, that the proposed interest of the intervener in *Stone* was to recover on an assignment by a non-debtor of "proceeds" from a contract between the non-debtor and a different company, including from legal claims. The putative intervenor's theory was that in the instance that the debtor (which was a shareholder of the assigning company) was, contrary to American law, somehow liable for the liabilities of the non-debtor, and thus able to step into its shoes and prosecute a claim for contract breach, the intervenor should, pursuant to the assignment (which the debtor did not execute) be able to collect on the claim. The District Court rejected the proposition that the putative intervenor would be able to recover from the debtor on the assignment and held further that the "legal fictions" the court would have to abide by in order to grant intervention amounted to "a house of cards." *In re: Stone & Webster, Inc*., Civ. No. 06-399-SLR., 2007 WL 2460590, *2 n.4. (D. Del. Aug. 29, 2007). Moreover, and notably, the Third Circuit's decision in *Stone* does not so much as reference *Marin* or *Phar-Mor*—the two leading cases on this topic in the Third Circuit.

§ 1109(b) . . . gives a creditors' committee an unconditional right to intervene in a non-core, 'related to' proceeding pending before the federal district court."); *U.S. v. State Street Bank (In re Scott Cable Comm., Inc.),* No. ADV. A-01-04605, 2002 WL 417013, at *3 (Bankr. D. Del. Mar. 4, 2002) ("it is clear that the Third Circuit recognizes that all of the parties listed in § 1109(b) have the absolute right to intervene"); *In re G-I Holdings, Inc.*, 292 B.R. 804, 812 (Bankr. D.N.J. 2003) (rejecting assertion that intervenor must satisfy two-prong test, including "sufficient stake in the outcome," in favor of unconditional right granted in § 1109(b)).

18. Moreover, this motion is timely. A court should determine the timeliness of a motion to intervene within its "sound discretion" by considering "all the circumstances," including "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay," if any, in making the application to intervene. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). The Adversary Proceeding began just a few weeks ago, and only three weeks have passed since this Court entered the TRO—during which time the AHSLC attempted to obtain consent to intervene. The Adversary Proceeding is therefore still in its infancy, with discovery *requests* apparently just served on May 27, 2011. No motions to dismiss or for summary judgment have been filed. Indeed, the Debtors could still amend their complaint by right to add additional plaintiffs. Fed. R. Civ. P. 15(a)(1)(b); Fed. R. Bankr. P. 7015. Consequently, intervention here would cause no delay or prejudice in the proceedings.

### B. The Ad Hoc Second Lien Committee's Request Also Satisfies the Requirements for Intervention By Right Under Fed. R. Civ. P. 24(a)(2)

19. Even if the AHSLC did not have a statutory right to intervene—although it certainly does—this Court should still allow the AHSLC to intervene as of right. Federal Rule of Civil Procedure 24(a)(2) provides that a court "must" allow intervention "when the applicant

claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2).

20. A potential intervenor under this provision must demonstrate four elements: "first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998).

21. As discussed, this motion is timely. Moreover, the parties of which the AHSLC is composed are the Debtors' creditors, and therefore the AHSLC has a legally cognizable interest that is the subject of the Adversary Proceeding, and which could be impaired by its outcome.

22. It is also clear that none of the existing adversary parties adequately represents the AHSLC's interests. The Trusts own the Debtors, and Mangano is the Debtors' CEO. It is therefore unsurprising that Debtors appear willing to concede, without sufficiently evaluating the facts and claims asserted by the Maryland Plaintiffs, that Debtors must indemnify Mangano and the Trusts. By contrast, the AHSLC believes not only that Debtors have no obligation to indemnify Mangano and the Trusts, but also that it is unnecessary for this Court to address the Debtors' indemnification obligations because the concerns regarding collateral estoppel and depletion of Debtors' assets through costly third-party discovery are sufficient to trigger the automatic stay and for this court to enjoin the Maryland Litigation. Additionally, the Maryland Plaintiffs' are clearly adverse to the AHSLC in that they seek to proceed with litigation that would cause the Debtors to incur significant discovery-related costs, and which, as discussed,

could harm Debtors' ability to challenge claims asserted by PPE Indiana in the Debtors' chapter 11 cases, litigate issues relating to the rejection of the PPE Indiana Management Agreement and the assumption of the Trademark License Agreement and defend the PPE Indiana Arbitration.

## CONCLUSION

For the foregoing reasons, the AHSLC respectfully requests that this Court enter an Order: (i) authorizing the AHSLC to intervene as plaintiffs in the Adversary Proceeding; and, (ii) granting such further relief as is appropriate.

Dated: June 7, 2011

Respectfully submitted,

By: */s/ Stanley B. Tarr*

**BLANK ROME LLP**

David W. Carickhoff (No. 3715)
Stanley B. Tarr (No. 5535)
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Tel: 302.425.6400
Fax: 302.425.6464
Carickhoff@BlankRome.com
Tarr@BlankRome.com

**AKIN GUMP STRAUSS HAUER & FELD, LLP**

Ira S. Dizengoff, Esq.
Sean O'Donnell, Esq.
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
sodonnell@akingump.com

Scott L. Alberino, Esq.
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
salberino@akingump.com

*Counsel to the Ad Hoc Second Lien Committee*